RECEIVED

MAR 11 2026

BY MAIL

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MISSOURI**

**EASTERN DIVISION**


**NNA COMPANY,** *1279 Rand Rd, Des Plaines, IL 60016*

**TOMASZ GAWRON**, *2226 S Goebbert Rd, Apt. 364, Arlington Heights, IL 60005*

**AGATA GAWRON**, *2226 S Goebbert Rd, Apt. 364, Arlington Heights, IL 60005*

**EMILIA GAWRON,** *640 Crescent Ln, Lakewood, CO 80214*

**GRAZYNA MUSZYNSKA,** *28414 W Arch Dr, Barrington, IL 60010*

**Plaintiffs,**

v.

**NESTLÉ PURINA PETCARE COMPANY**

*1 Checkerboard Square, St. Louis, Missouri 63164*

**Defendant.**


Civil Action No. _____


## I.   COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff NNA Company, by and through its authorized representative, and individual Plaintiffs – Tomasz Gawron, Agata Gawron, Emilia Gawron, and Grażyna Muszyńska, named together as a "Plaintiff", bring this action against Defendant Nestlé Purina PetCare Company ("Defendant") and allege as follows:


## II.   PARTIES

1. Plaintiff NNA Company is an Illinois-based enterprise engaged in the development of natural, environmentally sustainable pet care products.

2. Plaintiff developed a patented cat litter product manufactured from sunflower hulls, a waste product of agricultural production.

3. Plaintiff Tomasz Gawron is an individual residing in Illinois and serves as an authorized representative of NNA Company. Mr. Gawron attended the networking event organized by Defendant on September 9, 2025 and personally interacted with members of Defendant's jury.

4. Plaintiff Agata Gawron is an individual residing in Illinois and is associated with NNA Company. Ms. Gawron attended the September 9, 2025, networking event organized by Defendant and participated in presenting Plaintiff's product.

5. Plaintiff Emilia Gawron is an individual residing in Colorado and is associated with NNA Company. Ms. Gawron was present at the September 9, 2025, event organized by Defendant and interacted with representatives of Defendant during the exhibition.

6. Plaintiff Grazyna Muszynska is an individual residing in Illinois and is associated with NNA Company. Ms. Muszynska actively contributed to the preparation and submission of Plaintiff's applications to Defendant's Petcare Innovation Prize competition and performed various tasks related to Plaintiff's participation in the program, including assisting in the preparation of application materials and supporting documentation.

7. Each of the Individual Plaintiffs is of Polish origin and speaks English with a noticeable Eastern European accent.

8. Defendant Nestlé Purina PetCare Company is a corporation with its principal place of business at 1 Checkerboard Square, St. Louis, Missouri 63164.

9. Defendant organizes and operates the Petcare Innovation Prize competition intended to identify innovative products in the pet care industry.

### III.    JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §1331 because this action arises under federal law including 42 U.S.C. §1981.

6. Plaintiff asserts claims under 42 U.S.C. §1981 for discrimination in the making and enforcement of contracts.

7. This Court also has diversity jurisdiction under 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant resides in this District.

### IV.    FACTUAL ALLEGATIONS

9. Defendant operates a multi-stage competition known as the Petcare Innovation Prize.

10. The competition invites early-stage companies to submit innovative products for evaluation.

11. Between the 2022 edition and the 2024 edition, Plaintiff applied to the competition and was repeatedly selected among the top applicants.

12. Plaintiff's product is a patented (U.S. Patent No. US9861072B2), environmentally sustainable cat litter manufactured from sunflower hulls.

13. The product is biodegradable, plant-based, and designed to reduce allergens and environmental waste.

14. In September 2025, Plaintiff attended a networking event organized by Defendant in Scottsdale, Arizona.

15. Plaintiff was approved to exhibit its product at the event.

16. During the event, members of Defendant's jury largely avoided Plaintiff's booth.

17. Interactions that occurred focused not on the product but on the national origin of Plaintiff's representatives.

18. Jury members repeatedly asked Plaintiff's representatives' questions concerning where they were "originally from."

19. Plaintiff's representatives explained that the company operates in Illinois.

20. Plaintiff's team members are of Polish origin and speak with Eastern European accents.

21. In the 2026 edition, Defendant rejected Plaintiff's application for inclusion among the top participants and then among the winners.

22. During the September 9, 2025, networking event organized by Defendant in Scottsdale, Arizona, the Individual Plaintiffs represented NNA Company and presented Plaintiff's patented sunflower-hull cat litter product.

23. Members of Defendant's jury approached the booth operated by Plaintiffs but repeatedly directed questions toward the Individual Plaintiffs regarding their national origin rather than the merits of the product.

24. The Individual Plaintiffs were repeatedly asked where they were "originally from" and similar questions concerning their ethnic background and accents.

25. These questions were directed toward multiple Individual Plaintiffs in the presence of other participants and exhibitors.

26. Plaintiffs observed that Defendant's jury members engaged other exhibitors primarily with questions concerning their products, technology, and commercial strategy, while directing questions toward Plaintiffs focused on personal origin and nationality.

27. The repeated questioning regarding national origin and accent caused the Individual Plaintiffs embarrassment, humiliation, and emotional distress during the event.

28. The discriminatory focus on the ethnic origin and accent of the Individual Plaintiffs created an environment in which Plaintiffs reasonably believed that their application would not be evaluated based on objective criteria.

29. Defendant did not explain Plaintiff's request regarding the reasons for the Defendant's applications' evaluations.

30. Plaintiff believes that its application was evaluated through the lens of ethnic bias rather than objective merit.

31. Plaintiff's patented product was ranked below products lacking innovation or intellectual property protection.

32. Defendant's actions caused Plaintiff loss of opportunity, reputational damage, and economic harm.

## V.    COUNT I Violation of 42 U.S.C. §1981

25. Plaintiff incorporates the preceding paragraphs.

27. Federal law guarantees all persons the equal right to make and enforce contracts.

28. Defendant offered participation in the competition as a commercial opportunity involving evaluation, promotion, and potential investment.

29. Defendant intentionally discriminated against Plaintiff based on ethnic and national origin.

30. Such discrimination interfered with Plaintiff's ability to compete on equal terms.

31. Plaintiff alleges that but for the discriminatory focus on the ethnic ancestry and accent of Plaintiff's representatives, Plaintiff would have been afforded the same opportunity as other applicants to advance in the competition

32. Plaintiff suffered damages as a result.

## VI.    COUNT II Breach of Implied Contract

32. Plaintiff incorporates the preceding paragraphs.

33. Defendant implicitly promised that all applications would be evaluated fairly and based on merit.

34. Plaintiff relied on this promise by submitting its application and participating in the competition.

35. Defendant breached this implied contract by allowing discriminatory considerations to influence the evaluation.

## VII.    COUNT III Promissory Estoppel

36. Defendant represented that the competition would identify innovative pet care solutions.

37. Plaintiff reasonably relied on these representations when investing time and resources to participate.

38. Defendant's discriminatory conduct caused Plaintiff substantial loss.

## VIII.  COUNT IV Unfair Competition

39. Defendant engaged in unfair business practices by promoting the competition as merit-based while allegedly applying discriminatory criteria.

40. Plaintiff suffered competitive harm and lost business opportunities.

## IX.    COUNT V Conspiracy to Violate Civil Rights of 42 U.S.C. §§1981 and 1985(3)

41. Plaintiff incorporates the preceding paragraphs.

42. Defendant acted through its officers, employees, jurors, and agents responsible for organizing and administering the Petcare Innovation Prize competition.

43. Two or more individuals acting on behalf of Defendant participated jointly in the evaluation and decision-making process concerning Plaintiff's participation in the competition.

44. These individuals collectively discussed, evaluated, and determined which applicants would advance in the competition and which would be excluded.

45. During September 9, 2025, networking event organized by Defendant, members of Defendant's jury directed repeated questions to Plaintiff's representatives regarding their national origin rather than the merits of Plaintiff's patented product.

46. Plaintiff's representatives are individuals of Polish origin whose speech reflects a noticeable Eastern European accent.

47. The national origin or accent of Plaintiff's representatives has no relevance to the technological or commercial merits of Plaintiff's product.

48. Plaintiff observed that members of Defendant's jury actively engaged other exhibitors with questions regarding their products while directing questions to Plaintiff concerning where its representatives were "originally from."

49. Upon information and belief, members of Defendant's evaluation panel subsequently discussed Plaintiff's participation and collectively agreed to exclude Plaintiff from advancement in the competition despite Plaintiff's prior recognition among the top applicants and the patented nature of Plaintiff's product.

50. The actions of Defendant's agents were taken jointly and in concert as part of the competition's evaluation process.

51. The conduct of these individuals was motivated, at least in part, by discriminatory animus toward Plaintiff's ethnic ancestry and national origin.

52. Through their coordinated actions, Defendant's agents conspired to interfere with Plaintiff's ability to compete for the commercial opportunities associated with the competition, including promotion, industry exposure, and potential investment relationships.

53. Such conduct constitutes a conspiracy to deprive Plaintiff of the equal right to make and enforce contracts as guaranteed by 42 U.S.C. §1981.

54. Such conduct further constitutes a conspiracy motivated by discriminatory animus intended to deprive Plaintiff of the equal protection of the laws and equal privileges and immunities under the laws in violation of 42 U.S.C. §1985(3).

55. As a direct and proximate result of Defendant's conspiratorial conduct, Plaintiff suffered damages including lost commercial opportunities, lost promotional exposure, reputational harm, and other economic losses.

56. Defendant is liable for the acts of its officers, employees, jurors, and agents acting within the scope of their authority.

## X.    COUNT VI Emotional Distress Suffered by Individual Plaintiffs

57. Plaintiffs incorporate the preceding paragraphs.

58. The conduct of Defendant's agents, jurors, and representatives during the September 9, 2025, networking event included repeated inquiries into the national origin and ethnic background of the Individual Plaintiffs rather than the merits of Plaintiff's product.

59. Such conduct was humiliating and degrading and was directed toward the Individual Plaintiffs because of their Polish origin and Eastern European accents.

60. The repeated focus on personal origin in a professional and competitive environment caused the Individual Plaintiffs embarrassment, humiliation, and emotional distress.

61. The actions of Defendant's representatives were intentional, reckless, and carried out with disregard for the dignity and equal rights of the Individual Plaintiffs.

62. As a direct and proximate result of Defendant's conduct, the Individual Plaintiffs suffered emotional distress, humiliation, mental anguish, and personal suffering.

## XI.    DAMAGES

63. Plaintiff incorporates the preceding paragraphs.

64. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages.

65. Defendant's discriminatory conduct deprived Plaintiff of the opportunity to compete on equal terms for the commercial benefits associated with the Petcare Innovation Prize

competition, including industry recognition, promotional exposure, and potential investment relationships.

66. Plaintiff's product is protected by a patent and represents a commercially viable innovation in environmentally sustainable pet care products. Advancement in Defendant's competition would have provided Plaintiff access to investors, commercial partners, and industry exposure critical to the commercialization of Plaintiff's technology.

67. Defendant's conduct caused Plaintiff to lose significant business opportunities, including potential investment relationships, promotional exposure, and partnerships within the pet care industry.

68. Defendant's actions further caused reputational harm to Plaintiff's business and diminished Plaintiff's ability to attract investors and commercial partners.

69. The full extent of Plaintiff's damages will be proven at trial, but includes economic losses, loss of business opportunities, reputational harm, emotional distress of individual Plaintiffs, and other consequential damages.

70. Defendant's conduct was intentional, reckless, and carried out with deliberate disregard for Plaintiff's federally protected rights.

71. Plaintiff has suffered substantial economic damages including lost investment opportunities, lost promotional exposure, reputational harm, emotional distress of individual Plaintiffs, and other financial losses. The amount in controversy exceeds $75,000 exclusive of interest and costs.

72. Plaintiff seeks compensatory damages, punitive damages, and all other relief permitted by law in amounts to be determined at trial.

## XII.   SUPPLEMENTAL ALLEGATIONS REGARDING DISCRIMINATORY INTENT

42. Plaintiff's team members are individuals of Polish origin whose speech reflects a noticeable Eastern European accent.

43. During the September 9, 2025, networking event organized by Defendant, members of Defendant's jury repeatedly directed questions toward Plaintiff's representatives concerning their national and ethnic origin rather than the merits of Plaintiff's product.

44. Such questions included repeated inquiries regarding where Plaintiff's representatives were "originally from."

45. The origin of Plaintiff's representatives bears no relevance to the technological or commercial merits of Plaintiff's patented product.

46. Plaintiff observed that jury members actively engaged other exhibitors with questions about their products while directing questions to Plaintiff focused on personal background and origin.

47. Accent discrimination and discrimination based on ethnic ancestry constitute unlawful discrimination under federal civil rights law when they interfere with contractual or commercial opportunities.

48. Defendant's conduct created a discriminatory environment in which Plaintiff's application was evaluated through the prism of ethnic bias rather than objective merit.

49. As a result, Plaintiff was denied the equal opportunity to compete for recognition, promotion, and potential investment associated with the competition.

50. Plaintiff's product satisfied the objective criteria promoted by Defendant for participation in the competition, including innovation, sustainability, and commercial viability. Plaintiff alleges that, but for Defendant's discriminatory consideration of Plaintiff's ethnic ancestry and accent, Plaintiff would have advanced in the competition and obtained the commercial opportunities associated with the program.

## XIII. MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CLAIMS

### Legal Standard Under 42 U.S.C. §1981

51. Section 1981 guarantees all persons within the United States the same right to make and enforce contracts without discrimination based on race, ancestry, or ethnic characteristics. The statute applies broadly to private commercial relationships.

52. The Supreme Court has recognized that discrimination based on ethnic ancestry or cultural characteristics falls within §1981's protection, even where the parties may otherwise be considered members of the same race. *See Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987).*

53. Courts in the Eighth Circuit apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),* under which a plaintiff may prove discrimination through circumstantial evidence.

### Accent-Based Discrimination May Constitute National Origin Discrimination.

54. Federal courts have repeatedly recognized that discrimination based on accent may serve as evidence of unlawful discrimination where the accent is linked to national origin.

55. *In Carino v. University of Oklahoma Board of Regents*, the Tenth Circuit held that adverse employment decisions based on an employee's accent are unlawful where the accent does not interfere with job performance.

56. Similarly, the Eighth Circuit has acknowledged that comments ridiculing an employee's accent may demonstrate discriminatory animus based on national origin. *See Guimaraes v. SuperValu, Inc., 674 F.3d 962 (8th Cir. 2012)*.

57. Other federal courts have likewise concluded that accent discrimination may constitute direct evidence of discrimination. *See Akouri v. Florida Department of Transportation, 408 F.3d 1338 (11th Cir. 2005)*.

## Discriminatory Intent May Be Established Through Circumstantial Evidence.

58. Discriminatory intent rarely appears in explicit form and may be inferred from the circumstances surrounding a decision.

59. The Supreme Court has explained that courts may consider patterns of behavior, statements by decision-makers, and deviations from ordinary procedures when evaluating claims of discrimination. *See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977)*.

60. Here, Plaintiff alleges that Defendant's jurors repeatedly focused on the national origin of Plaintiff's representatives rather than the merits of Plaintiff's patented product. Such conduct provides circumstantial evidence that Plaintiff's application was evaluated through the lens of ethnic bias rather than objective criteria.

## Plaintiff Has Adequately Alleged Interference With a Contractual Opportunity.

61. Section 1981 protects not only existing contracts but also the ability to pursue and obtain contractual opportunities without discrimination.

62. Commercial competitions that offer investment exposure, promotional opportunities, and potential partnerships create economic relationships within the scope of § 1981.

63. If Defendant's evaluation process denied Plaintiff equal access to those opportunities based on ethnic bias, Defendant's conduct constitutes unlawful interference with Plaintiff's contractual rights.

## Plaintiff's Claims Are Plausible at the Pleading Stage.

64. At the pleading stage, a plaintiff needs only to provide a short and plain statement showing entitlement to relief.

65. The Supreme Court has held that discrimination complaints are not required to establish a full prima facie case in the complaint itself. *See Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).*

66. Plaintiff's allegations that Defendant's decision-makers focused on national origin and accent rather than product merit plausibly support an inference of discriminatory conduct.

Individual Plaintiffs May Recover Emotional Distress Damages

67. Courts recognize that discrimination directed toward individuals may give rise to damages for emotional distress, humiliation, and mental suffering. Where discriminatory conduct targets individuals based on ethnic ancestry or national origin, such individuals may recover compensatory damages for the personal harm caused by such conduct.

68. Federal courts have repeatedly held that emotional distress damages are available in civil rights actions where discriminatory conduct causes humiliation or mental suffering. In *Carey v. Piphus, 435 U.S. 247 (1978),* the United States Supreme Court recognized that damages for emotional distress are recoverable where constitutional or civil rights violations cause mental anguish and humiliation.

69. Similarly, in *Akouri v. Florida Department of Transportation, 408 F.3d 1338 (11th Cir. 2005),* the court affirmed an award of emotional distress damages where the plaintiff was subjected to discriminatory treatment based on national origin and accent. The court recognized that discriminatory statements and conduct directed toward a person's ethnic background may cause humiliation and emotional harm.

70. Federal courts have also recognized that discrimination related to an individual's accent may serve as evidence of national origin discrimination. In *Carino v. University of Oklahoma Board of Regents, 750 F.2d 815 (10th Cir. 1984),* the court held that adverse treatment based on an employee's accent is unlawful where the accent does not interfere with the individual's ability to perform or participate in the relevant activity.

71. The United States Court of Appeals for the Eighth Circuit has likewise acknowledged that comments or conduct directed at a person's accent may demonstrate discriminatory animus related to national origin. In *Guimaraes v. SuperValu, Inc., 674 F.3d 962 (8th Cir. 2012),* the court recognized that discriminatory remarks concerning accent may serve as circumstantial evidence of unlawful discrimination.

72. Courts have further recognized that emotional distress damages do not require medical testimony and may be proven through the testimony of the affected individuals.

In *Turic v. Holland Hospitality, Inc., 85 F.3d 1211 (6th Cir. 1996),* the court held that a plaintiff's own testimony describing humiliation, embarrassment, and mental anguish may be sufficient to support an award of emotional distress damages.

73. Here, the Individual Plaintiffs allege that Defendant's representatives repeatedly focused on their national origin and accent rather than the merits of their product during a professional industry event. Such conduct is capable of causing humiliation and emotional distress in a public business environment.

74. Because the discriminatory conduct was directed personally toward the Individual Plaintiffs, they are entitled to seek compensatory damages for emotional distress in addition to the economic damages suffered by NNA Company.

## XIV.   PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A.  Enter judgment in favor of Plaintiff;

B.  Award compensatory damages;

C.  Award punitive damages;

D.  Award costs and attorney's fees;

E.  Grant any further relief the Court deems appropriate.

## XV.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

NNA Company (*Plaintiff Pro Se)*

By Tomasz Gawron: _____

Authorized Representative

Email: tomasz@naturallynonallergic.com

Phone: +1 630 822 1236

Tomasz Gawron *(Plaintiff Pro Se)*: _____

Authorized Representative

Email: tomasz@naturallynonallergic.com

Phone: +1 630 822 1236


Agata Gawron *(Plaintiff Pro Se)*: _____

Authorized Representative

Email: agata@naturallynonallergic.com

Phone: +1 630 822 2891


Emilia Gawron *(Plaintiff Pro Se)*: _____

Authorized Representative

Email: emilia@naturallynonallergic.com

Phone: +1 719 427 7304


Grażyna Muszyńska *(Plaintiff Pro Se)*: _____

Authorized Representative

Email: grace@naturallynonallergic.com

Phone: +1 847 867 3650