UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NNA COMPANY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-00359-CMS |
| | ) | |
| NESTLE PURINA PETCARE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the Court are Defendant Nestle Purina Petcare Company's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 25) and Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 29). The Court will grant Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 25) and deny Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 29) as futile.

**BACKGROUND**

**I. Factual Background**

The following allegations from Plaintiffs' Amended Complaint (Doc. 15) are accepted as true for purposes of this Order. *See Brokken v. Hennepin Cnty.*, 140 F.4th 445, 450 (8th Cir. 2025).

Plaintiffs Tomasz Gawron, Agata Gawron, Emilia Gawron, and Grazyna Muszynska, acting *pro se*, are representatives of NNA Company and Illinois residents of Polish descent who speak with Eastern European accents. (Doc. 15 ¶¶ 3–6). NNA Company is an Illinois-based company that owns a patented cat litter product. *Id.* ¶ 2.

Plaintiffs applied for the Petcare Innovation Prize (PCIP) competition hosted by Defendant Nestle Purina Petcare Company. *Id.* ¶¶ 3–6, 9, 14, 17. The PCIP competition is "intended to

identify innovative products in the pet care industry." *Id.* ¶ 9. Defendant invites businesses to submit their products "for structural evaluation, market promotion, and potential corporate investment." *Id.* ¶ 16. Plaintiffs applied for the 2026 PCIP to showcase their patented cat litter. *Id.* ¶ 27. Plaintiffs were approved to exhibit their product at the PCIP. *Id.* ¶ 21.

Upon traveling to Scottsdale, Arizona, and attending the PCIP, Plaintiffs were repeatedly asked where they were "originally from," but few people asked about their product. *Id.* ¶¶ 20, 23–24. According to Plaintiffs, "Defendant's jury largely avoided Plaintiff's booth." *Id.* ¶ 22. They allege that the questions "regarding national origin and accent caused the Individual Plaintiffs embarrassment, humiliation, and emotional distress during the event." *Id.* ¶ 34. Because of the questions, Plaintiffs believed that their application would not be evaluated based on objective criteria. *Id.* ¶ 35.

Defendant subsequently rejected Plaintiffs' application for inclusion among the top participants and winners and ranked Plaintiffs' cat litter "below products lacking innovation or intellectual property protection." *Id.* ¶¶ 27, 38. Plaintiffs claim that Defendant did not explain the reasons for this ranking and "refused to provide any mathematical scores, neutral metrics, or objective feedback regarding the specific evaluation" of their application. *Id.* ¶ 36.

## II. Procedural Background

On July 9, 2026, Plaintiffs filed the operative First Amended Complaint, alleging, in Count I, racial discrimination in violation of 42 U.S.C. § 1981; Count II, breach of implied contract; Count III, that Plaintiffs "relied on [Defendant's representation] that the competition would identify innovative pet care solutions," warranting promissory estoppel; Count IV, unfair competition, in that Defendant "engaged in unfair business practices by promoting the competition

. . . while . . . applying discriminatory criteria"; Count V, conspiracy to violate civil rights in violation of §§ 1981 and 1985(3); and Count III, emotional distress. *Id.* at 5–9.

More generally, "Plaintiff asserts claims under 42 U.S.C. § 1981 for discrimination in the making and enforcement of contracts." *Id.* ¶ 11. Plaintiffs state, "Federal law guarantees all persons the equal right to make and enforce contracts." *Id.* ¶ 41. They allege that "Section 1981 . . . guarantees . . . the same rights to make and enforce contracts, and to enjoy all benefits, privileges, terms, and conditions of the contractual relationship, as is enjoyed by native citizens." *Id.* ¶ 42.

On July 14, 2026, this Court dismissed NNA Company as a plaintiff because a corporation cannot proceed in federal court *pro se*. (Doc. 22).

On July 23, 2026, Defendant filed its Motion to Dismiss Plaintiffs' Amended Complaint. (Doc. 25). On August 3, 2026, Plaintiffs filed their Response in Opposition to Defendant's Motion to Dismiss and a Motion for Leave to File Second Amended Complaint. (Docs. 28, 29).

On August 28, 2026, Defendant filed its Memorandum in Support of its Motion to Dismiss and its Memorandum in Opposition to Plaintiffs' Motion for Leave (Docs. 33, 34). In the Memorandum in Support of the Motion to Dismiss, Defendant argues: (1) Plaintiffs lack standing to bring their claims; (2) Count I fails to state a claim in that it does not allege racial discrimination or contractual rights; (3) Plaintiffs fail to plead a contract implied in fact or implied in law; (4) Plaintiffs fail to state a claim for promissory estoppel in that they fail to plead a promise or foreseeable detrimental reliance; (5) Plaintiffs do not allege any elements of an unfair competition claim; (6) Plaintiffs fail to sufficiently allege a conspiracy; and (7) Plaintiffs fail to allege a claim for emotional distress. (Doc. 34).

## LEGAL STANDARDS

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must include "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief . . . to give the defendant fair notice of . . . the claim . . . and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations omitted); Fed. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted), and "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 555). The issue is not whether the plaintiff will prevail, but whether he is "entitled to present evidence in support of his claim." *Id.*

When analyzing a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Brokken*, 140 F.4th at 450. That said, the Court does not "presume the truth of legal conclusions." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (internal citations omitted). The Court's analysis is context specific and "requires the reviewing court to draw on its judicial experience and common sense." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## DISCUSSION

### I. Standing

As a preliminary matter, Plaintiffs lack standing to bring Counts II, III, IV, and V on behalf of former Plaintiff NNA Company. Representatives of a business have standing to bring suit if they allege personal injury to themselves, rather than injury only to the business. *See, e.g.*, *Conley*

*v. City of West Des Moines*, 157 F.4th 946, 954 (8th Cir. 2025) (citing *Potthoff v. Morin*, 245 F.3d 710, 717–18 (8th Cir. 2001)) (individual representative lacked standing because he "suffered no cognizable injury . . . distinct from the harm suffered by the company").

Here, NNA Company has been dismissed as a party, leaving only the individual Plaintiffs. *See* (Doc. 22 at 2). In Counts II through V, to the extent Plaintiffs allege any injury at all, they allege only injury to former Plaintiff NNA Company, as opposed to any injury to individual Plaintiffs. *See, e.g.*, (Doc. 15 ¶ 62) ("Defendant's discriminatory conduct caused Plaintiff substantial loss."); *Id.* ¶ 64 ("Plaintiff suffered competitive harm and lost business opportunities."); *Id.* ¶ 79 ("Plaintiff suffered damages including lost commercial opportunities, lost promotional exposure, reputational harm, and other economic losses.").

Also, in the separate "Damages" section of the Amended Complaint, Plaintiffs allege only injuries to Plaintiff NNA Company, with the exception of "emotional distress of individual Plaintiffs," which is an injury attributable to Plaintiffs' claim in Count VI, "Emotional Distress Suffered by Individual Plaintiffs." *See id.* at 8, 9.

To the extent the injuries alleged in Counts II, III, IV, and V of the Amended Complaint are to former Plaintiff NNA Company, Plaintiffs lack standing to assert those claims.

## II. Failure to State a Claim

Additionally, Plaintiffs fail to state a claim in each of Counts I through VI of the Amended Complaint.

### A. Count I

In Count I, though Plaintiffs allege injury to themselves, they otherwise fail to state a claim.

Count I points out, "Federal law guarantees all persons the equal right to make and enforce contracts." (Doc. 15 ¶ 41). It continues, "Section 1981 . . . guarantees . . . the same right to make

and enforce contracts, and to enjoy all benefits, privileges, terms, and conditions of the contractual relationship, as is enjoyed by native citizens." *Id.* ¶ 42. Plaintiffs then go on to allege that Defendant violated their rights under 42 U.S.C. § 1981 because it "interfered with Plaintiffs' legal right to the making, performance, and enjoyment of an equal, non-biased contractual opportunity . . . ." (Doc. 15 ¶ 51).

"To prevail on a § 1981 claim, a plaintiff must show: '(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant.'" *Combs v. The Cordish Cos.*, 862 F.3d 671, 681 (8th Cir. 2017) (citing *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468–69 (8th Cir. 2009)). "Any claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship' under which the plaintiff has rights." *Id.* at 681. "Section 1981 does not apply only to existing contractual relationships"; it also applies to would-be contracts. *Comcast Corp. v. Nat. Ass'n of African Am.-Owned Media*, 589 U.S. 327, 333 (2020). But a plaintiff must adequately allege that discrimination is the but-for cause of its injury from failure of a would-be contract. *Id.*

Here, Plaintiffs allege they were "systematically targeted" based on their Polish ancestry and Eastern European accents. (Doc. 15 ¶¶ 24, 50). Plaintiffs fail to allege an existing contract, although they arguably allege a potential would-be contract. But Plaintiffs also fail to allege that discrimination was the but-for cause of the failure of any would-be contract or of any resulting injury to Plaintiffs.

Plaintiffs conclude, without support, that their "Polish ethnic ancestry and ancestral characteristics were the 'but-for' cause of Defendant's adverse decisions" and "[b]ut for the discriminatory animus . . . NNA Company would have been afforded an equal, fair opportunity to advance in the commercial competition." (Doc. 15 ¶ 52). Thus, Plaintiffs do not allege that

Defendant's actions were the but-for cause of any failure of a would-be contract. They allege merely that Defendant's actions caused NNA Company not to have "an equal, fair opportunity to advance in the commercial competition"—a competition Plaintiffs do not allege they otherwise would have won even given "an equal, fair opportunity to advance."

For the same reasons, Plaintiffs fail to demonstrate how any discrimination by Defendant resulting in an impaired contractual relationship pursuant to Section 1981 was the but-for cause of any resulting injury to Plaintiffs. Rather, the only alleged injuries to "Individual Plaintiffs" are "immediate, severe emotional distress, personal degradation, and professional humiliation within the live public forum," and "Plaintiff Grazyna Muszynska suffered severe emotional distress stemming from the targeted contamination and bad-faith destruction of her extensive administrative application labor." (Doc. 15 ¶ 54). These simply are not injuries attributable to an impaired contractual relationship or would-be contractual relationship. In any event, Plaintiffs' allegations amount only to mere speculation and legal conclusions, the truth of which the Court need not presume. *See Jones*, 104 F.4th at 1046.

Accordingly, Count I is dismissed.

**B. Count II**

In Count II, Plaintiffs allege Defendant "implicitly promised that all applications [to PCIP] would be evaluated fairly and based on merit," Plaintiffs relied on that promise, and "Defendant breached [the] implied contract by allowing discriminatory considerations to influence the evaluation." *Id.* ¶¶ 57–59. Count II must be dismissed for failure to state a claim.

Plaintiffs' Amended Complaint does not specify whether Count II is a claim for breach of a contract implied in law or in fact. In their Response in Opposition to Defendant's Motion to

Dismiss, Plaintiffs clarify that they assert a claim for breach of contract implied in fact. (Doc. 28 at 11–12).

To state a claim for breach of contract implied in fact, a plaintiff must plead offer, acceptance, and consideration. *Elliott v. Bridgestone/Firestone N. Am. Tire, LLC*, No. 4:05-cv-1297-CDP, 2006 WL 6191453, at *7 (E.D. Mo. Mar. 7, 2006). "The existence of a contract necessitates a 'meeting of the minds' which the court determines by looking to the intention of the parties as expressed or manifested in their words or acts." *Id.* (citing *Brand v. Boatmen's Bank of Cape Girardeau*, 824 S.W.2d 89, 91 (Mo. Ct. App. 1992)).

Here, it seems Plaintiffs allege Defendant offered the opportunity to attend the PCIP, Plaintiffs accepted and provided consideration by attending, and Defendant breached the contract by not ensuring their application "would be evaluated fairly and based on merit." (Doc. 15 ¶ 57). Again, conspicuously absent from Count II is any allegation that Defendant's actions were the but-for cause of Plaintiffs' losing the competition and failing to gain the benefits of winning. Instead, Plaintiffs allege merely that Defendant's actions caused NNA Company not to be "evaluated fairly and based on merit." Given that Plaintiffs do not even speculate that they would have won the competition if evaluated fairly and based on merit, and that their damages resulted therefrom, their claim fails.

**C. Count III**

In Count III, Plaintiffs raise promissory estoppel. Count III, in its entirety, alleges, "Defendant represented that the competition would identify innovative pet care solutions[,]" "Plaintiff reasonably relied on these representations when investing time and resources to participate[,]" and "Defendant's discriminatory conduct caused Plaintiff substantial loss." (Doc. 15 ¶¶ 60–62).

To state a claim for promissory estoppel, a plaintiff must allege "(1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Robinson Mech. Contractors Inc. v. PTC Grp. Holdings Corp.*, No. 1:15-cv-77-SNLJ, 2017 WL 3970602, at *5 (E.D. Mo. Sept. 8, 2017) (quoting *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007)). "The promise element cannot be based on preliminary negotiations and discussions or an agreement to negotiate the terms of a future contract." *Id.* (citing *1861 Grp., L.L.C. v. Wild Oats Mkts., Inc.*, 728 F. Supp. 2d 1052, 1059–60 (E.D. Mo. 2010)) (internal quotations omitted).

Plaintiffs do not allege any of the necessary elements of a promissory estoppel claim. Plaintiffs claim is that "Defendant represented that the competition would identify innovative pet care solutions." (Doc. 15 ¶ 60). This is not an actionable promise on which Plaintiffs could rely in a way Defendant should have expected. Nor did it result in an injustice that only enforcement of the promise could cure. In other words, enforcement of Defendant's alleged representation that the competition would identify innovative pet care solutions would not necessarily cure any perceived injustice to Plaintiffs.

**D. Count IV**

In Count IV, titled "Unfair Competition," the extent of Plaintiffs' claim is that "Defendant engaged in unfair business practices by promoting the competition as merit-based while allegedly applying discriminatory criteria," thereby causing "competitive harm and lost business opportunities." *Id.* ¶¶ 63–64.

Unfair competition is:

> [A] form of unlawful business injury. It consists . . . [of] passing off or attempting to pass off, on the public, the goods or business of one person as and for the goods

> or business of another, or in the conduct of a trade or business in such a manner that there is either an express or an implied representation to that effect.

*Control Tech. & Sols., LLC v. Omni Energy Partners, LLC*, No. 4:21-cv-0686-MTS, 2026 WL 145330, at *10 (quoting *Nat'l Motor Club of Mo., Inc. v. Noe*, 475 S.W.2d 16, 19 (Mo. 1972)).

Plaintiffs clearly fail to state a claim for unfair competition.

**E. Count V**

In Count V, Plaintiffs allege Defendant conspired to violate Plaintiffs' civil rights in violation of 42 U.S.C. §§ 1981 and 1985(3) by "acting through its officers, employees, jurors, and agents responsible for organizing . . . the [PCIP]" to "jointly" decide "which applicants would advance in the competition and which would be excluded." *Id.* ¶¶ 66–68. Plaintiffs state, "Defendant's agents conspired to interfere with Plaintiff's ability to compete for . . . commercial opportunities [provided by the PCIP]." *Id.* ¶ 76.

First, Section 1981 does not provide for a conspiracy claim. *See, e.g.*, 42 U.S.C. § 1981; *Chamber v. Omaha Girls Club*, 629 F. Supp. 925, 940 (D. Neb. 1986) (distinguishing Section 1981 claim from Section 1985(3) conspiracy claim).

Second, Plaintiffs fail to state a claim for Section 1985(3) conspiracy. To state a claim for Section 1985(3) conspiracy, a plaintiff must allege:

> [T]he defendants did (1) "conspire . . . (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" . . . that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). The second element "requires that the plaintiff prove a class-based 'invidiously discriminatory animus.'" *Id.* Additionally, a plaintiff

"must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Id.* (citing *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988)). A plaintiff must allege a "meeting of the minds" of the defendants. *Rodgers v. University of Missouri Bd. of Curators*, 56 F. Supp. 3d 1037, 1055 (E.D. Mo. 2014).

Here, Plaintiffs fail to allege with particularity a meeting of the minds among Defendant and others to discriminate against Plaintiffs. Rather, Plaintiffs merely claim, in conclusory fashion and without particularity or specificity, that Defendant and others "conspired" against Plaintiffs and that the conspirators' conduct was motivated "by discriminatory animus." (Doc. 15 ¶¶ 75, 77). This, without more, is insufficient to plead a conspiracy pursuant to Section 1985(3). *See, e.g.*, *Rodgers*, 56 F. Supp. at 1055.

**F. Count VI**

Plaintiffs all but concede that they fail to state a claim for intentional infliction of emotional distress, negligent infliction of emotional distress, or any other sort of emotional distress in Count VI. *See* (Doc. 28 at 13–14) ("Defendant correctly observes that the . . . Amended Complaint is not fully clear. . . . The present allegations . . . may . . . be insufficient to sustain a [claim] without additional facts.").

Because Plaintiffs' conclusory allegations in Count VI do not state a claim for intentional, negligent, or any other actionable form of emotional distress, Count VI is dismissed.

**III. Motion for Leave to File Second Amended Complaint**

Plaintiffs' proposed Second Amended Complaint would remove references to "Plaintiff NNA Company," and would add that Plaintiffs traveled to the PCIP to "present NNA Company product." (Doc. 29-2 at 2). The Second Amended Complaint also would allege that Plaintiffs

"spent hundreds of hours of personal labor" and "expended personal financial funds" to attend the PCIP. *Id.* ¶ 15.

While Plaintiffs' deletions of references to former Plaintiff NNA Company and new allegations that they spent their own labor and funds may resolve the focus in Counts II through V on expenditures by NNA Company, all six counts still fail to state a claim for the reasons already explained at length *supra*.

"A district court's denial of leave to amend a complaint may be justified if the amendment would be futile." *Hillsheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (citing *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013)) (internal quotations omitted). "An amendment is futile if the amended claim 'could not withstand a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 719 (8th Cir. 2014)).

Plaintiffs still fail to allege facts in their proposed Second Amended Complaint sufficient to withstand Defendant's Motion to Dismiss for failure to state a claim. In addition to the allegations regarding Plaintiffs' individual expenditures, the Second Amended Complaint would add that:

(1) Defendant's solicitation "created a concrete commercial offer and unilateral contractual evaluation relationship. . . . But for Plaintiff's Polish ethnic ancestry and ancestral vocal traits, Plaintiffs would have enjoyed equal contractual evaluation opportunities." (Doc. 29-2 ¶¶ 55–56);

(2) Defendant's guidelines constituted a concrete offer for a contract implied in fact, and "Defendant breached this implied-in-fact contract by substituting ethnic bias for the promised objective criteria." *Id.* ¶¶ 61–62;

(3) Defendant represented that competition submissions would be evaluated on merit, and Plaintiffs reasonably relied on those promises to their detriment. *Id.* ¶ 66;

(4) Defendant deceptively solicited submissions and personal financial expenditures under the false pretense of a merit-based competition while applying discriminatory criteria, which damaged Plaintiffs. *Id.* ¶ 69;

(5) Members of Defendant's evaluation panel acted in concert to exclude Plaintiffs based on discriminatory animus. *Id.* ¶ 86; and

(6) Defendant's targeting of Plaintiffs was "extreme, outrageous, and intended solely to degrade Plaintiffs, directly causing severe emotional anguish, physical anxiety, and sleep disruption." *Id.* ¶ 93.

This additional language does not resolve the various deficiencies in Plaintiffs' First Amended Complaint and would not change the outcome of the Motion to Dismiss. The proposed additions also consist mostly of legal conclusions, which the Court need not accept as true. *See Jones*, 104 F.4th at 1046. For those reasons, Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 29) will be denied as futile.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 25) is **GRANTED** and this case is dismissed.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 29) is **DENIED** as futile.

The Clerk of Court is directed to close this case.

So ordered this 10th day of September 2026.

CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE